1  JOSEPH W. COTCHETT (# 36324)
   PHILIP L. GREGORY  (# 95217)
2  JOSEPH C. WILSON  (# 249027)
   **COTCHETT, PITRE & McCARTHY**
3  San Francisco Airport Office Center
   840 Malcolm Road, Suite 200
4  Burlingame, CA  94010
   Telephone:  (650) 697-6000
5  Facsimile:  (650) 692-0577
   E-mail: jcotchett@cpmlegal.com
6          pgregory@cpmlegal.com
           jwilson@cpmlegal.com
7

8

9                **UNITED STATES DISTRICT COURT**

10               **NORTHERN DISTRICT OF CALIFORNIA**

11

12  IN RE:  KATRINA CANAL  BREACHES          Case No. 05-4182 "K" (2)
            CONSOLIDATED   LITIGATION        Miscellaneous Case No. CV 08 80007 MISC
13

14                                           **MR-GO PLAINTIFFS' REPLY BRIEF
                                             TO WASHINGTON GROUP
15                                           INTERNATIONAL, INC.'S OPPOSITION
                                             TO PLAINTIFFS' MOTION TO QUASH**
16

17  PERTAINS TO MRGO

18

19

20

21

22

23

24

25

26

27

28

1    On February 5, 2008, Washington Group International, Inc. ("WGII") filed its

2    Memorandum in Opposition to Motions of MR-GO Plaintiffs to Quash, to "Remit," and in

3    support of Cross-Motion to Compel Compliance with the Subpoena.  Since that time, the Court

4    has denied the Motion to Remit.  As such, the MR-GO Plaintiffs will only address the

5    Opposition to the Motion to Quash.

6                                            **I.**

7                                          **FACTS**

8    The Court should note that the plain language of WGII's subpoena does not limited the

9    scope of materials requested, nor does it set appropriate time parameters for the documents to be

10   produced.  WGII asserts that Professor Bea testified in deposition that he was not retained as an

11   expert until March 2007.  WGII utilizes the deposition testimony of Professor Bea out of context

12   and upon a statement not fully developed by opposing counsel. WGII specifically fails to

13   consider the additional testimony wherein Professor Bea tells counsel that he was in discussions

14   with Joe Bruno and Daniel Becnel (attorneys working on behalf of the MRGO PSLC) going back

15   before that date. (See Exhibit 1 - Bea Depo, p.10, l.21 to p. 12, l.15).

16   The facts are clear, but unreported by WGII, Professor Bea's ILIT work terminated on

17   May 23, 2006.  Professor Bea's work backgrounding the litigation started in March 2006 at the

18   request of from Joe Bruno and Danny Becnel; and although he did not begin work for the

19   litigation "under contract" until March 2007, he did undertake litigation related work between

20   March 2006 and March 2007.  In particular, these efforts are part and parcel of the litigation

21   privilege that the MRGO PSLC seeks to force compliance with the discovery orders in place.

22   Now, WGII seeks the same materials from Professor Bea directly. (See Exhibit 2 -

23   Subpoena to Bea).  In this subpoena as well, the language is clearly designed to elicit production

24   of expert materials for a time period when Professor Bea was acting on behalf of the MRGO

25   PSLC.  The MRGO PSLC has likewise filed a Motion to Quash this subpoena for similar

26   reasons.

27

28

LAW OFFICES
COTCHETT,
PITRE &
McCARTHY

**Mr-go Plaintiffs' Reply Brief To Washington Group International, Inc.'S Opposition to Plaintiffs' Motion to Quash,** Case No. 05-4182 "K" (2)                1

# II.

## ARGUMENT

### A.    *PLAINTIFFS HAVE STANDING TO MOVE TO QUASH WGII'S SUBPOENA*

On March 1, 2007, the Court instituted Case Management and Scheduling Order No. 4 (CMO No. 4) for management purposes of the cases consolidated in the Katrina umbrella that appeared to include common issues of law and fact involving the cause and effect of the innundation by water of the Greater New Orleans area during Hurricane Katrina.  CMO No. 4 established the MRGO Plaintiffs' Subgroup Litigation Committee ("MRGO PSLC") and granted it the authority to manage that subgroup in the consolidated litigation.  CMO No.4,§(I)(C)(2)(b).

In furtherance of its responsibility, the MRGO PSLC has retained a number of experts to testify regarding the failure of the levees and flood walls at issue, and the results of these horrific events.  One such expert is Robert Bea, a professor at UC Berkeley.

Throughout the litigation, WGII has engaged in gamesmanship to avoid its own production requirements while the MRGO PSLC has complied with the dictates of CMO No. 4. Now WGII seeks to procure information from the MRGO PSLC's expert before the expert discovery deadline as established by CMO No.4.

California law is quite clear hat the MRGO PSLC does have standing to bring its Motion to Quash.   As previously set forth in the Motion to Quash, a party cannot object to a subpoena duces tecum served on a nonparty, but rather, must seek a protective order or make a motion to quash. Schwarzer, Tashima & Wagstaffe, *California Practice Guide: Federal Civil Procedure Before Trial,* ¶ 11:2291 (2005 rev.); Pennwalt Corp. v. Durand-Wayland, Inc., 708 F.2d 492, 494 n. 5 (9th Cir.1983); Moon v. SCP Pool Corp., 232 F.R.D. 633, (C.D.Cal.,2005).

The sanctity of deadline concerning the disclosure of a party's expert work product was considered to contain some merit by Judge Duval in drafting his case management order.  So much so that specific deadlines for the production of these materials were established.  CMO No. 4, § (IV)(E)(3) establishes that the Plaintiff's deadline to produce expert reports is May 30, 2008.

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**Mr-go Plaintiffs' Reply Brief To Washington Group International, Inc.'S Opposition to Plaintiffs' Motion to Quash,** Case No. 05-4182 "K" (2)                    2

1  This reason alone requires the Court to quash WGII's subpoena.  In its' Opposition, WGII has

2  failed to enunciate any reason why the MRGO PSLC would not have standing to bring the

3  Motion to Quash a subpoena issued with such insidious intent in light of the clear dictates of

4  CMO No. 4.

5  **B.      *PLAINTIFFS MOTION TO QUASH IS TIMELY***

6      Federal Rules of Civil Procedure, Rule 45 (c)(3) holds in pertinent part:

7      **(3) Quashing or Modifying a Subpoena.**

8

9      **(A)** *When Required*. On timely motion, the issuing court must

10     quash or modify a subpoena that:

11

12         **( i)** fails to allow a reasonable time to comply;

13

14         **(ii)** requires a person who is neither a party nor a party's

15         officer to travel more than 100 miles from where that

16         person resides, is employed, or regularly transacts business

17         in person--except that, subject to Rule 45(c)(3)(B)(iii), the

18         person may be commanded to attend a trial by traveling

19         from any such place within the state where the trial is held;

20

21         **(iii)** requires disclosure of privileged or other protected

22         matter, if no exception or waiver applies; or

23

24         **(iv)** subjects a person to undue burden.

25

26     **(B)** *When Permitted.* To protect a person subject to or affected by a

27     subpoena, the issuing court may, on motion, quash or modify the

28     subpoena if it requires:

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

---

**Mr-go Plaintiffs' Reply Brief To Washington Group International, Inc.'S Opposition to
Plaintiffs' Motion to Quash,** Case No. 05-4182 "K" (2)              3

1        **( i)** disclosing a trade secret or other confidential research,

2        development, or commercial information;

3

4        **(ii)** disclosing an unretained expert's opinion or information

5        that does not describe specific occurrences in dispute and

6        results from the expert's study that was not requested by a

7        party; or

8

9        **(iii)** a person who is neither a party nor a party's officer to

10        incur substantial expense to travel more than 100 miles to

11        attend trial.

12

13        Even if the Court deems the Motion to Quash as untimely, it should not compel

14 the production of documents sought.  Subsection (3)(B)(ii), in particular, grants the court

15 discretion in protecting a "person...affected by a subpoena" and the issuing court may

16 quash or modify a subpoena if it requires disclosing an unretained expert's opinion or

17 information that does not describe specific occurrences in dispute and results from the

18 expert's study that was not requested by a party.

19        First, it appears WGII agrees in its Opposition and subsequent subpoena to

20 Professor Bea that Professor Bea's work product on behalf of the MRGO PSLC after

21 March of 2007 should be protected from discovery outside the confines of CMO No. 4.

22 Because WGII's subpoena does not contain language sufficient to clarify the scope of

23 production, the Motion to Quash should be granted.

24        Second, Professor Bea's Professor Bea's work product on behalf of the MRGO

25 PSLC prior to March of 2007 should be protected from discovery outside the confines of

26 CMO No. 4 because it involved efforts on behalf of the MRGO PSLC that will be

27

28

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**Mr-go Plaintiffs' Reply Brief To Washington Group International, Inc.'S Opposition to
Plaintiffs' Motion to Quash,** Case No. 05-4182 "K" (2)         4

1    produced in accordance with CMO No. 4.  Again, WGII's subpoena does not contain

2    language sufficient to clarify the scope of production. Therefore, the Motion to Quash

3    should be granted.

4    **C.    *BECAUSE THE POORLY DRAFTED SUBPOENA DOES NOT PROVIDE***

     ***SUFFICIENT CLARIFICATION OF THE SCOPE OF PRODUCTION,***
5
     ***COMPLIANCE IS UNDULY BURDENSOME***
6
7            The subpoena in question saddles UC Berkeley with an unreasonably burdensome

8    task to produce the information subject of the subpoena without inadvertently disclosing

9    the MRGO PSLC's expert work product.  Obviously, WGII has given little consideration

10   to the relevance of its requests and simply demands that the entire universe of documents

11   generated by the ILIT team be produced. A quick reading of the "specifications of

12   documents to be produced" numbers 5, 6, 7, 8, 9, 10, 11, 12, 14, and 17 reveals that WGII

13   seeks documentation from "[Professor Bea] or any other member of ILIT."  To comply,

14   UC Berkeley counsel would need to make critical evaluations of each document produced

15   to assure that Professor Bea's expert work product is not disclosed.  To do so would

16   likely require the input of the MRGO PSLC; an exercise that would likely require a

17   substantial expenditure of time.

18           Surely, this Court will agree that the interests of fairness dictate that before a

19   blanket production of documents is ordered that some guidance is provided to ensure the

20   interests of the parties are maintained.  CMO No. 4 has already established the

21   appropriate guidelines under which the parties are to act.  WGII seeks to circumvent these

22   clear standards, and every other entity should not be penalized by its disregard.

23
24                                           **III.**

25                                      **CONCLUSION**

26           For the foregoing reasons, this court should grant the MRGO PSLC's Motion to

27   Quash.

28

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

1    Respectfully Submitted,

2    PLAINTIFFS' LIAISON COUNSEL

3

4    /s/    Joseph M. Bruno
     JOSEPH M. BRUNO
5    PLAINTIFFS LIAISON COUNSEL
     Law Offices of Joseph M. Bruno
6
     LA Bar Roll Number: 3604
7
     855 Baronne Street
8    New Orleans, Louisiana 70113
     Telephone: (504) 525-1335
9    Facsimile: (504) 561-6775

10   MR-GO PLAINTIFFS SUB-GROUP LITIGATION
     COMMITTEE
11

12   s/ James Parkerson Roy
     JAMES PARKERSON ROY
13
     MR-GO PSLC Liaison Counsel
14   LA. Bar Roll Number: 11511
     Domengeaux Wright Roy & Edwards LLC
15   P.O. Box 3668
     Lafayette, LA. 70502
16   Telephone: (337) 593-4190 or (337) 233-3033
     Facsimile: (337) 233-2796
17

18   For

19   MR-GO PLAINTIFFS SUB GROUP LITIGATION

20   COMMITTEE
     Jonathan Andry (Andry Law Firm, New Orleans,
21                   LA)
     Clay Mitchell (Levin, Papantonio et al., Pensacola,
22                  FL)
     Pierce O'Donnell (O'Donnell & Associates, Los
23   Angeles, CA)
     James Parkerson Roy (Domengeaux, Wright, et al.,
24   Lafayette, LA)

25

26

27

28

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**Mr-go Plaintiffs' Reply Brief To Washington Group International, Inc.'S Opposition to Plaintiffs' Motion to Quash,** Case No. 05-4182 "K" (2)                                    6

## PROOF OF SERVICE

I am employed in San Mateo County, which is where service of the document(s) referred to below occurred. I am over the age of 18 and not a party to the within action. My business address is Cotchett, Pitre & McCarthy, San Francisco Airport Center, 840 Malcolm Road, Suite 200, Burlingame, California 94010. I am readily familiar with Cotchett, Pitre & McCarthy's practices for the service of documents. On this date, I served a true copy of the following document(s) in the manner listed below:

**MR-GO PLAINTIFFS' REPLY BRIEF
TO WASHINGTON GROUP INTERNATIONAL, INC.'S OPPOSITION TO
PLAINTIFFS' MOTION TO QUASH**

__X__        **BY MAIL:** I am readily familiar with this firm's practice for collection and processing of correspondence for mailing. Following that practice, I placed a true copy of the aforementioned document(s) in a sealed envelope, addressed to each addressee, respectively, as specified below. The envelope was placed in the mail at my business address, with postage thereon fully prepaid, for deposit with the United States Postal Service on that same day in the ordinary course of business.

**SEE ATTACHED SERVICE LIST**

_____        **BY OVERNIGHT COURIER SERVICE:** I am readily familiar with this firm's practice for causing documents to be served by overnight courier. Following that practice, I caused the sealed envelope containing the aforementioned document(s) to be delivered via overnight courier service to the addressee(s) specified below:

_____        **BY FACSIMILE:** I am readily familiar with this firm's practice for causing documents to be served by facsimile. Following that practice, I caused the aforementioned document(s) to be transmitted to the telephone number(s) of the addressee(s) specified below:

_____        **BY HAND DELIVERY:** I am readily familiar with this firm's practice for causing documents to be served by hand delivery. Following that practice, I caused the sealed envelope containing the aforementioned document(s) to be hand delivered to the addressee(s) specified below.

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct. Executed at Burlingame, California, on February 21, 2008.

_____

_____
/s/
MARY ANN BROWN

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

i

1

2                                **SERVICE LIST**

3                                          ***Defense Liaison Counsel***

4   **VIA FIRST CLASS MAIL**
    Ralph S. Hubbard, III
    Seth A. Schmeeckle
5   LUGENBUHL, WHEATON, PECK,
    RANKIN
6   & HUBBARD
    27th Floor, Pan American Life Center
7   601 Poydras Street
    New Orleans, Louisiana 70130
8

9   **VIA FIRST CLASS MAIL**                ***Counsel for Washington Group***
    William D. Treeby                       ***International, Inc.***
    Heather S. Lonian
10  STONE, PIGMAN, WALTHER,
    WITTMAN, LLC
11  546 Carondelet Street
    New Orleans, Louisiana 70130
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

                                                                              ii

00001

1      UNITED STATES DISTRICT COURT

2      EASTERN DISTRICT OF LOUISIANA

3

4

5 IN RE: KATRINA CANAL BREACHES    CIVIL ACTION
  CONSOLIDATED LITIGATION
6                        NO. 05-4182
              and Consolidated Cases
7                        "K" (2)
              JUDGE DUVAL
8
              MAG. WILKINSON
9 ------------------------------------------

10 ROBINSON                   CIVIL ACTION

11                  NO. 06-2286
  VERSUS
12
  THE UNITED STATES
13

14

15

16

17

18

19

20      VIDEOTAPED DEPOSITION OF

21          ROBERT GLENN BEA,

22 60 Shuy Drive, Moraga, California 94556

23 given in the offices of Lambert & Nelson, 701

24 Magazine Street, New Orleans, Louisiana 70130

25 on Monday November 19, 2007.

BEA, ROBERT GLENN - Vol. I                Page 1



00010

1    Q.  And because the Court Reporter is

2 going to be making a written transcript of

3 your comments, I would ask you to please give

4 me an audible answer rather than nodding your

5 head.

6    A.  Done.

7    Q.  Is there any reason today why you

8 cannot give competent testimony in this

9 matter?  Are you under any medications or --

10   A.  None.

11   Q.  -- any disabilities?

12   A.  Old age.

13   Q.  Other than the ones that afflict us

14 all.

15   A.  Some of us.

16   Q.  If at any point I ask you a question

17 and it's not clear, will you agree to tell me

18 that it's not clear and give me an opportunity

19 to restate the question?

20   A.  Yes.

21   Q.  I would like to find out how you

22 first became involved in this litigation.

23   A.  It happened a year from -- Well,

24 March, 19 -- Or, pardon me.  March, 2006.  I

25 was contacted by Mr. Danny Becnel and

00011

1 subsequently by Joseph Bruno.

2    Q.  And what did they tell you at that

3 time?

4    A.  Well, they were actually asking

5 would I serve as an expert concerned with the

6 consolidated Katrina litigation Federal

7 District Court, New Orleans.

8    Q.  And did you agree at that time?

9    A.  No, I did not.

10    Q.  Okay.  Did you subsequently agree?

11    A.  Yes.  March, 2007.

12        (Whereupon a discussion was held

13 off the record.)

14        VIDEO OPERATOR:

15        We're back on the record.  It's

16        8:22.

17 EXAMINATION BY MR. SMITH:

18    Q.  I understand from your previous

19 answer that you were first contacted

20 concerning this litigation in March of 2006.

21    A.  Correct.

22    Q.  At that time you did not agree to

23 serve as an expert.

24    A.  Correct.

25    Q.  Did you have continuing

00012
 1 conversations with either Mr. Becnel or Mr.

 2 Bruno after that initial discussion?

 3    A.  Certainly.

 4    Q.  And can you tell me a little bit

 5 about those conversations?

 6    A.  Really dealing with understanding

 7 details of the studies that we had performed

 8 here since September 30th, 2005.

 9    Q.  And when you say "we had performed

10 here", what studies are you referring to that

11 you had performed beginning in September of

12 2005?

13    A.  Those were the studies that are

14 documented in the Independent Levee

15 Investigation Team report.

16    Q.  Okay.  Did you bring a copy of that

17 report with you, Dr. Bea?

18    A.  Electronically.

19    Q.  All right.

20      MR. O'DONNELL:

21      Let's mark his computer.

22 EXAMINATION BY MR. SMITH:

23    Q.  I am going to hand you what's been

24 marked as Bea Exhibit Number 1 and ask if you

25 can identify that as the report that you just

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: KATRINA CANAL BREACHES
CONSOLIDATED LITIGATION

PERTAINS TO: BARGE

CIVIL ACTION

NO. 05-4182 "K" (2)

JUDGE DUVAL
MAG. WILKINSON

---

## NOTICE OF SUBPOENA REQUIRING THE PRODUCTION OF DOCUMENTS

Pursuant to the Court's Case Management and Scheduling Order No. 5, entered

September 18, 2007 (Docket No. 8974), and as subsequently amended ("CMO No. 5"), PLEASE

TAKE NOTICE that pursuant to Rule 45 of the Federal Rules of Civil Procedure, Defendant

Washington Group International, Inc. ("WGII") has caused a subpoena *duces tecum* ("subpoena")

to be issued by the Northern District of California upon Robert G. Bea, a professor in the

University of California at Berkeley ("UC Berkeley") Department of Civil and Environmental

Engineering and the co-author of the Report published by the Independent Levee Investigation

Team ("ILIT"), led by the University of California at Berkeley and funded in part by the

University of California at Berkeley Center for Technology Research in the Interest of Society

("CITRIS"). The Subpoena has been directed to Prof. Robert G. Bea, at 212 McLaughlin Hall,

UC Berkeley, Berkeley, California 94720-1712. The subpoena is directed to Prof. Bea as a

member of ILIT and the co-author of the ILIT Report and seeks only those documents from him

in his capacity as such, and is not directed to Prof. Bea, and therefore does not seek documents

from him, as an expert retained by counsel as of March, 2007 in connection with the *In re*

*Katrina Canal Breaches Consol. Litig.* A courtesy copy of the subpoena has also been provided



to counsel for UC Berkeley, Christopher M. Patti, University Counsel, 1111 Franklin Street, 8th Floor, Oakland, California 94607-5200.

The subpoena requires the production of documents as described and designated in the attached Schedule A, at 10:00 a.m., February 29, 2008, at the offices of Jones Day, 555 California Street, 26th Floor, San Francisco, California 94104-1500.

The notice, service, and enforcement of this subpoena is without prejudice to the pending motion of WGII to dismiss, or any other similar motion to be filed by WGII, and shall not be deemed a waiver by WGII of any right.

Dated:  January 30, 2008                             Respectfully submitted,


                                        /s/ William D. Treeby
                                        William D. Treeby, 12901
                                        Carmelite M. Bertaut, 3054
                                        Heather S. Lonian, 29956
                                                Of
                                        Stone Pigman Walther Wittmann L.L.C.
                                        546 Carondelet Street
                                        New Orleans, Louisiana 70130
                                        Telephone: (504) 581-3200
                                        Facsimile: (504) 581-3361

                                        Attorneys for Washington Group
                                        International, Inc.

                                        Of counsel
                                        Adrian Wager-Zito
                                        Jones Day
                                        51 Louisiana Avenue, N.W.
                                        Washington, D.C. 20001-2113
                                        Telephone: (202) 879-3891
                                        Facsimile: (202) 626-1700

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: KATRINA CANAL BREACHES          CIVIL ACTION
CONSOLIDATED LITIGATION
                                       NO. 05-4182 "K" (2)

PERTAINS TO: BARGE                     JUDGE DUVAL
                                       MAG. WILKINSON

_____

## NOTICE OF SUBPOENA REQUIRING THE
## PRODUCTION OF DOCUMENTS

Pursuant to the Court's Case Management and Scheduling Order No. 5, entered

September 18, 2007 (Docket No. 8974), and as subsequently amended ("CMO No. 5"), PLEASE

TAKE NOTICE that pursuant to Rule 45 of the Federal Rules of Civil Procedure, Defendant

Washington Group International, Inc. ("WGII") has caused a subpoena *duces tecum* ("subpoena")

to be issued by the Northern District of California upon Robert G. Bea, a professor in the

University of California at Berkeley ("UC Berkeley") Department of Civil and Environmental

Engineering and the co-author of the Report published by the Independent Levee Investigation

Team ("ILIT"), led by the University of California at Berkeley and funded in part by the

University of California at Berkeley Center for Technology Research in the Interest of Society

("CITRIS"). The Subpoena has been directed to Prof. Robert G. Bea, at 212 McLaughlin Hall,

UC Berkeley, Berkeley, California 94720-1712. The subpoena is directed to Prof. Bea as a

member of ILIT and the co-author of the ILIT Report and seeks only those documents from him

in his capacity as such, and is not directed to Prof. Bea, and therefore does not seek documents

from him, as an expert retained by counsel as of March, 2007 in connection with the *In re*

*Katrina Canal Breaches Consol. Litig.* A courtesy copy of the subpoena has also been provided

to counsel for UC Berkeley, Christopher M. Patti, University Counsel, 1111 Franklin Street, 8th Floor, Oakland, California 94607-5200.

The subpoena requires the production of documents as described and designated in the attached Schedule A, at 10:00 a.m., February 29, 2008, at the offices of Jones Day, 555 California Street, 26th Floor, San Francisco, California 94104-1500.

The notice, service, and enforcement of this subpoena is without prejudice to the pending motion of WGII to dismiss, or any other similar motion to be filed by WGII, and shall not be deemed a waiver by WGII of any right.

Dated: January 30, 2008 _                          Respectfully submitted,


                                                   /s/ William D. Treeby
                                                   William D. Treeby, 12901
                                                   Carmelite M. Bertaut, 3054
                                                   Heather S. Lonian, 29956
                                                          Of
                                                   Stone Pigman Walther Wittmann L.L.C.
                                                   546 Carondelet Street
                                                   New Orleans, Louisiana 70130
                                                   Telephone: (504) 581-3200
                                                   Facsimile: (504) 581-3361

                                                   Attorneys for Washington Group
                                                   International, Inc.

                                                   Of counsel
                                                   Adrian Wager-Zito
                                                   Jones Day
                                                   51 Louisiana Avenue, N.W.
                                                   Washington, D.C. 20001-2113
                                                   Telephone: (202) 879-3891
                                                   Facsimile: (202) 626-1700

ƩₒAO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

Northern

DISTRICT OF    California

In Re: KATRINA CANAL BREACHES
CONSOLIDATED LITIGATION
V.

**SUBPOENA IN A CIVIL CASE**

Pertains to:  BARGE

Case Number:[1]   05-4182 "K" (2)

TO: Robert G. Bea
212 McLaughlin Hall
University of California at Berkeley
Berkeley, CA  94720-1712

(pending in the United States
District Court for the Eastern
District of Louisiana before the
Hon. Stanwood R. Duval, Jr.)

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See attached Schedule A.

| PLACE    Jones Day<br>555 California Street, 26th Floor, San Francisco, CA 94104-1500 | DATE AND TIME<br>2/29/2008 10:00 am |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Aaron L. Agenbroad, Jones Day, 555 California Street, 26th Floor, San Francisco, CA 94104-1500, (415-626-3939),
Counsel for Washington Group International, Inc.

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

---

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                    DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

_____

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

<u>SCHEDULE A</u>

This subpoena is to be answered in accordance with the provisions of Federal Rule of Civil Procedure 45(d)(1) and in accordance with the following definitions and instructions:

A.    **Definitions**

The terms set forth below are defined as follows unless otherwise stated:

1.    "Document(s)," "data," "report(s)," "information," and "material(s)" shall be used in the broadest sense contemplated by Federal Rule of Civil Procedure 34, and shall include any writing of any kind, including, without limitation, any written, printed, taped, electronically or digitally encoded, graphic or other information, including, without limitation, originals, identical copies, translations and drafts thereof and all copies bearing notations and marks not found on the original. "Document(s)," "data," "report(s)," "information," and "material(s)" includes, without limitation, affidavits; agreements; analyses; appointment books; articles from publications; workpapers of any kind; books; calendars; charts; checks (canceled or uncancelled); check stubs; communications; computer disks, print outs, tapes; confirmations; contracts; correspondence; credit card receipts; desk calendars; deskpads; diaries; diskettes; drafts; electronic mail; estimates; evaluations; facsimiles; files; filings; forms; graphs; invoices; journals; ledgers; letters; lists; maps; meeting minutes; memoranda; notations; notes; opinions; orders; pamphlets; papers; pictures; press releases; publications; receipts; recordings of conferences, conversations, or meetings; reports; statements; statistical records; studies; summaries; tabulations; telegrams; telephone records; telex messages; transcripts; understandings; videotapes; vouchers; and sheets or things similar to any of the foregoing however denominated.

"Document(s)," "data," "report(s)," "information," and "material(s)" further means any document now or at any time in the possession, custody or control of the entity to whom these

1

Requests are directed (together with any predecessors, successors, affiliates, subsidiaries or divisions thereof, and their officers, directors, employees, agents and attorneys). Without limiting the term "control" as used in the preceding sentence, a person is deemed to be in control of a document if the person has the right to secure the document or a copy thereof from another person having actual possession thereof.

2.    "Concerning," "regarding," "relating to," and "demonstrating" means referring to, describing, discussing, evidencing, or constituting.

3.    "ILIT" means the Independent Levee Investigation Team, led by the University of California at Berkeley and funded in part by the University of California at Berkeley's Center for Technology Research in the Interest of Society ("CITRIS"); any of ILIT's members, employees, affiliates, representatives, advisors, agents, attorneys or associates; or any other person acting on behalf of the ILIT in any capacity.

4.    "You," or "Your" means Robert G. Bea, a professor in the UC Berkeley Department of Civil and Environmental Engineering and the co-author of the Report published by the Independent Levee Investigation Team ("ILIT"), led by the University of California at Berkeley and funded in part by the University of California at Berkeley Center for Technology Research in the Interest of Society ("CITRIS"), and any agents, designees, representatives or other persons acting on your behalf or at your request. The subpoena is directed to Prof. Bea as a member of ILIT and the co-author of the ILIT Report and seeks only those documents from him in his capacity as such, and is not directed to Prof. Bea, and therefore does not seek documents from him, as an expert retained by counsel as of March, 2007 in connection with the *In re Katrina Canal Breaches Consol. Litig.*

2

5.    "Person" or "individual" means any natural person or any business, legal, or government entity or association.

6.    "Meeting" means the contemporaneous presence of any natural persons, whether or not such presence occurred by chance or was prearranged and whether or not the meeting was formal or informal or occurred in connection with some other activity, and whether or not the meeting took place via telephonic, telegraphic video or in-person, or otherwise.

7.    "Including" means including without limitation.

8.    "Identify," when used in reference to a person, means to state his, her, or its full name, present or last known address, and telephone number.

9.    Unless otherwise set forth specifically in a request, the relevant time period applicable to this subpoena is August 29, 2005 through and including the date of your document production.

10.    "Hurricane Katrina" means the hurricane that made landfall along the Mississippi Gulf Coast to the east of the New Orleans, Louisiana area on or about the morning of August 29, 2005.

11.    "WGII" means Washington Group International, Inc., a division of URS Corporation.

12.    "Canal" shall include the waterway itself, as well as any and all adjacent flood control structures and/or spoil banks, including levees and floodwalls.

13.    "MRGO" means the Mississippi River Gulf Outlet Navigation Canal, as well as any and all adjacent flood control structures and/or spoil banks, including levees and floodwalls.

14.    "GIWW" means the Gulf Intracoastal Waterway, as well as any and all adjacent flood control structures and/or spoil banks, including levees and floodwalls.

3

15.    "Industrial Canal" means the Inner Harbor Navigation Canal, also referred to locally as the Industrial Canal, that connects Lake Pontchartrain, the Mississippi River, and the segment of the GIWW between New Orleans East and St. Bernard Parish.

16.    "Breach(es)" means the failure, during and/or immediately after Hurricane Katrina, other than from overtopping, of a levee, berm, spoil bank, levee wall, and/or flood wall resulting in the release of floodwater.

17.    "Adjacent to" means next to, along, near, or on/or near the boundary of property or a specific area.

18.    "East Bank Industrial Area" ("EBIA") means the 32-acre parcel of land in New Orleans bordered by Florida and Claiborne Avenues to the north and south along the eastern edge of the Industrial Canal and bounded on the east by the levee and/or floodwall.

**B.    Instructions**

1.    The documents sought in these Requests include all documents in your possession, custody or control. Unless otherwise indicated, these Requests seek all documents generated or received by you during the Relevant Period.

2.    You shall produce all documents in the manner in which they are maintained in the usual course of your business and/or you shall organize and label the documents to correspond with the categories in these Requests. A Request for a document shall be deemed to include a request for any and all file folders in which the document was contained, transmittal sheets, cover letters, exhibits, enclosures, or attachments to the document in addition to the document itself.

3.    Each document withheld from production based upon privilege or any similar claim shall be identified by: (a) the type of document; (b) the general subject matter of the

4

document; (c) the date of the document; and (d) such other information as is sufficient to identify the document, including, without limitation, the author of the document, the relationship of the author and any recipient to each other. The nature of each claim of privilege shall be set forth in sufficient detail to enable a determination to be made concerning the reasons for the privilege claim.

4.     Documents attached to each other should not be separated.

5.     Documents not otherwise responsive to these Requests shall be produced if such documents mention, discuss, refer to, or explain the documents that are called for by these Requests.

6.     If any document within the scope of these Requests has been destroyed, that document shall be identified, including, without limitation, identification of its author(s), intended or unintended recipient(s), addressee(s), intended or unintended recipients of blind copies, date and subject matter. The circumstances of such destruction shall be set forth, and any documents relating to such destruction shall be produced.

7.     In producing documents and other materials, you are requested to furnish all documents or things in your possession, custody or control, regardless of whether such documents or materials are possessed directly by you or your directors, officers, agents, employees, representatives, subsidiaries, managing agents, affiliates, accountants or investigators, or by your attorney or their agents, employees, representatives or investigations.

8.     If you object to any part of any request, you shall state fully the nature of the objection. Notwithstanding any objections, you shall nonetheless comply fully with the other parts of the request not objected to.

9.    Each Request shall be construed independently and not with reference to any other document Request for the purpose of limitation.

10.    "All" and "each" shall be construed as "all and each."

11.    The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery Request all responses that might otherwise be construed to be outside the scope.

12.    The use of the singular form of any word includes the plural and vice versa. The past tense shall include the present tense and vice versa.

13.    The documents shall be produced in full, without abbreviation or expurgation.

### SPECIFICATIONS OF DOCUMENTS TO BE PRODUCED

As indicated above, the Specifications of Documents to be Produced are directed to Prof. Bea as a member of ILIT and the co-author of the ILIT Report and seeks only those documents from him in his capacity as such, and is not directed to Prof. Bea, and therefore does not seek documents from him, as an expert retained by counsel as of March, 2007 in connection with the *In re Katrina Canal Breaches Consol. Litig.*:

1) documents, including statements of eyewitnesses or other interviews provided to you or any other member of ILIT, reflecting instances in which residents of the Lower Ninth Ward in New Orleans, Louisiana or others encountered difficulty dewatering excavations in or adjacent to the EBIA

2) documents provided to you or any other member of ILIT reflecting reports of underseepage and/or ponding of water along or adjacent to the Industrial Canal at the west edge of the Lower Ninth Ward in New Orleans

3) documents, including statements or other interviews provided to you or any other member of ILIT, reflecting complaints or other expressions of concern by residents of the Lower Ninth Ward and St. Bernard Parish concerning underseepage and/or ponding of water along or adjacent to the Industrial Canal, including who made those complaints, when those complaints were made, and to whom those complaints were made

6

4) documents supporting the conclusion ILIT made in Chapter 11, page 11-5 of the ILIT July 31, 2006 Final Report that the "main breaches that were the principal source of flooding for both the St. Bernard/Lower Ninth Ward protected area and the New Orleans East protected area were the levee frontages facing 'Lake' Borgne (which is actually a bay, as it is connected directly to the Gulf of Mexico)"

5) documents provided to you or any other member of ILIT reflecting that WGII was made aware or warned of underseepage of water along or adjacent to the Industrial Canal, particularly in the EBIA

6) documents provided to you or any other member of ILIT reflecting that any other person (including, but not limited to any natural person or any business, legal, or government entity or association) was made aware or warned of underseepage of water along or adjacent to the Industrial Canal, particularly in the EBIA

7) documents requests or other requests for information from you or any other member of ILIT to McElwee Brothers, Inc. or any other individual in connection with your investigation of Hurricane Katrina and its effects in the Industrial Canal and your preparation of the ILIT July 31, 2006 Final Report, or any interim drafts thereof

8) documents provided to you or any other member of ILIT by McElwee Brothers, Inc. or any other individual in connection with your investigation of Hurricane Katrina and its effects in the Industrial Canal and your preparation of the ILIT July 31, 2006 Final Report, or any interim drafts thereof

9) communications between you or any other member of ILIT with McElwee Brothers, Inc., Melvin M.L. McElwee, Sr., Sylvia Hurst, and/or any person acting on behalf of McElwee Brothers, Inc.

10) documents reflecting instances of disagreement among any members of the ILIT regarding conclusions in the ILIT July 31, 2006 Final Report, or any interim drafts thereof

11) documents reflecting theories examined or investigated by you or any other member of ILIT surrounding the breaches of the levees and flood walls along or adjacent to the EBIA in the Industrial Canal at the west edge of the Lower Ninth Ward in New Orleans

12) documents reflecting theories examined or investigated by you or any other member of ILIT that a runaway barge, i.e. a barge that had broken free of its moorings, caused the breaches of the levees and flood walls along or adjacent to the EBIA in the Industrial Canal at the west edge of the Lower Ninth Ward in New Orleans

13) documents supporting the conclusion ILIT made in Chapter 6, page 6-7 of the ILIT July 31, 2006 Final Report that "the barge [ING4727] slipped its moorings and was eventually drawn in through a breach that was already well developed"

7

14)  documents provided to you or any other member of ILIT reflecting or evidencing the theory that barge ING4727, or any other barge, caused or contributed to the breaches of the levees and flood walls along or adjacent to the EBIA in the Industrial Canal at the west edge of the Lower Ninth Ward in New Orleans

15)  documents reflecting the number of visits you made to New Orleans in connection with the ILIT Hurricane Katrina investigation, including, but not limited to, time sheets or similar documents you used to document the time you spent in New Orleans in connection with the ILIT Hurricane Katrina investigation

16)  documents reflecting what portions of the ILIT Hurricane Katrina investigation were funded by CITRIS

17)  photographs taken by you or any other member of ILIT in connection with ILIT's investigation of Hurricane Katrina, particularly in the Industrial Canal and the EBIA

18)  documents describing, reflecting, and/or defining the legal status, organization, and funding sources of ILIT

19)  copies of videos, webcasts, podcasts or other public interviews you have given concerning the ILIT Hurricane Katrina investigation

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Notice of Subpoena Requiring the

Production of Documents and Schedule A has been served upon all counsel of record through the

Court's CM/ECF electronic filing system or by placing same in the United States mail, postage

prepaid and properly addressed, this 30th day of January, 2008.

/s/ Heather S. Lonian
Heather S. Lonian