Aaron L. Agenbroad (State Bar No. 242613)
alagenbroad@jonesday.com
JONES DAY
555 California Street, 26th Floor
San Francisco, CA  94104
Telephone:    (415) 626-3939
Facsimile:    (415) 875-5700

Attorneys for WASHINGTON GROUP INTERNATIONAL, INC., A DIVISION OF URS CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IN RE: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION**<br><br>**PERTAINS TO: BARGE,**<br><br>**(PENDING IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF LOUISIANA AS CIVIL ACTION NO 05-4182 "K" (2) BEFORE HON. STANDWOOD R. DUVAL, JR.,**<br><br>**Defendant.** | **MISC. NO. 08-CV-80007MISC (PJH) (BZ)**<br><br>**WASHINGTON GROUP INTERNATIONAL, INC,'S MEMORANDUM IN OPPOSITION TO MOTION TO QUASH AND CONTEMPORANEOUS MOTION TO STAY PRODUCTION, AND IN SUPPORT OF CROSS-MOTION TO COMPEL COMPLIANCE WITH A THIRD-PARTY SUBPOENA**<br><br>Date:        April 16, 2008<br>Time:       9:00 a.m.<br>Courtroom: 3, 17th Floor<br>Judge:      Hon. Phyllis J. Hamilton |

**TABLE OF CONTENTS**

**Page**

NOTICE OF OPPOSITION AND CROSS-MOTION ................................................................ 1

REQUESTED RELIEF ............................................................................................................... 1

FACTS AND BACKGROUND .................................................................................................. 1

ARGUMENT ............................................................................................................................... 3

    I.    The MR-GO PSLC Simply Does Not Have Standing to Move to Quash And As Such, The Motion Should Be Rejected ....................................................... 4

    II.    The MR-GO PSLC's Undue Burden and Relevance Arguments Are Meritless Because the MR-GO PSLC Does Not Have Standing to Raise Those Arguments, and In Any Event, There is No Undue Burden, and the Documents Sought Are Highly Relevant. ............................................................. 8

    III.    WGII's Cross-Motion to Compel Compliance With the Subpoena Should Be Granted. ................................................................................................................. 9

CONCLUSION .......................................................................................................................... 13

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Diamond State Ins. Co. v. Rebel Oil Co.*
  157 F.R.D. 691 (D. Nev. 1994) .................................................................................... 7

*E.E.O.C. v. Danka Indus., Inc.*
  990 F. Supp. 1138 (E.D. Mo. 1997) ............................................................................ 7

*Estate of Ungar v. Palestinian Auth.*
  400 F. Supp. 2d 541 (S.D.N.Y. 2005) ......................................................................... 7

*In re Katrina Canal Breaches Consol. Litig.* ("*In re Katrina*")
  Civil Action No. 05-4182 (BARGE) (E.D. La.) ...................................................... 1, 2

*McCoy v. Southwest Airlines Co.*
  211 F.R.D. 381 (C.D. Cal. 2002) .............................................................................. 10

*Nova Prod., Inc. v. Kisma Video, Inc.*
  220 F.R.D. 238 (S.D.N.Y. 2004) ................................................................................. 7

*Parfait Family, et al. v. United States, et al.*
  Civil Action No. 07-3500 ............................................................................................ 2

*Smith v. Midland Brake, Inc.*
  162 F.R.D. 683 (D. Kan. 1995) ................................................................................... 9

*Windsor v. Martindale*
  175 F.R.D. 665 (D. Colo. 1997) .................................................................................. 9

**RULES**

Fed. R. Civ. P. 45(c)(2)(B) .................................................................................................. 9

Fed. R. Civ. P. 45(c)(3)(A) .................................................................................................. 9

**OTHER**

9 James Wm. Moore et al., *Moore's Federal Practice* § 45.50[3] (3d ed. 2007) ...................... 8, 10

**NOTICE OF OPPOSITION AND CROSS-MOTION**

TO COUNSEL OF RECORD:

PLEASE TAKE NOTICE that Washington Group International, Inc. ("WGII"), a division of URS Corporation, opposes the motion of the MR-GO Plaintiffs Sub-Group Litigation Committee ("MR-GO PSLC") to quash and contemporaneous motion to stay production ("Quash Motion" or "PSLC Mot."). Specifically, the MR-GO PSLC seeks to quash WGII's January 30, 2008 Subpoena for the Production of Documents ("Subpoena" or "Bea Subpoena") to Robert G. Bea, a professor at UC-Berkeley, a member of the Independent Levee Investigation Team ("ILIT"), and a co-author of the various reports by ILIT examining the performance of flood control systems in New Orleans during Hurricane Katrina in August, 2005.

PLEASE TAKE FURTHER NOTICE that on April 16, 2008 at 9:00 a.m., or as soon as the matter may be heard, in the courtroom of the Honorable Bernard Zimmerman, WGII will bring on for hearing its Cross-Motion to compel Prof. Bea to comply with the Subpoena.

**REQUESTED RELIEF**

WGII requests that the Court deny the MR-GO PSLC's motion to quash WGII's January 30, 2008 Subpoena for the Production of Documents to Prof. Bea and contemporaneous motion to stay production.

WGII further requests that the Court grant WGII's cross-motion to compel Prof. Bea to comply with the lawfully executed and properly served Subpoena.

**FACTS AND BACKGROUND**

On January 30, 2008, acting pursuant to Federal Rule of Civil Procedure 45 and the deadlines established by the United States District Court for the Eastern District of Louisiana in Case Management and Scheduling Order No. 5 ("CMO No. 5") (*see In re Katrina Canal Breaches Consol. Litig.* ("*In re Katrina*"), Civil Action No. 05-4182 (BARGE) (E.D. La.) Docket Record No. 8947), WGII caused to be served a third-party subpoena upon Robert G. Bea, a "professor in the University of California at Berkeley ('UC Berkeley') Department of Civil and Environmental Engineering and the co-author of the Report published by the Independent Levee Investigation Team, led by the University of California at Berkeley and funded in part by the

1  University of California at Berkeley Center for Technology Research in the Interest of Society."

2  *See* Bea Subpoena attached at Ex. A to accompanying Declaration of Shannon M. Kasley

3  ("Kasley Dec.").[1]  The Subpoena is returnable February 29, 2008 and was personally served on

4  Prof. Bea at 212 McLaughlin Hall at UC-Berkeley. *Id.*  WGII served not only Prof. Bea, but also

5  four other UC-Berkeley professors and ILIT members (Raymond Seed, Jonathan Bray, Michael

6  Riemer, and Juan Pestana).  WGII served these five professors because UC-Berkeley counsel has

7  taken the position that the ILIT Subpoena—a prior subpoena WGII served on ILIT in November,

8  2007, in the MR-GO category of *In re Katrina* cases—was somehow deficient because, according

9  to UC-Berkeley counsel, ILIT is not a "University entity."[2]  Therefore, in an effort to avoid any

10 further dispute as to the relationship between ILIT and UC-Berkeley, on January 30 and 31, and

11 February 4, 2008, WGII served these third-party subpoenas in connection with *In re Katrina*

12 *Canal Breaches Consol. Litig.*, Civil Action No. 05-4182 (BARGE) (E.D. La.).  These BARGE

13 third-party subpoenas were served on each professor individually as a member of ILIT, and with

---

[1] The Bea Subpoena clearly reflects that it was issued in the Barge category of cases currently pending in connection with *In re Katrina Canal Breaches Consol. Litig.*, Civil Action No. 05-4182 in the Eastern District of Louisiana (*see* Kasley Decl., Ex. A).  As noted above, the Barge category of cases is governed by CMO No. 5.  Thus, it is unclear to WGII why the MR-GO PSLC would attach CMO No. 4 as an exhibit to its motion (*see* PSLC Mot., Ex. 1), when CMO No. 4 is inapplicable in the Barge cases.  It is similarly unclear why the MR-GO PSLC would identify in the caption of its quash motion that it "Pertains to MRGO," when WGII served the Bea Subpoena in the Barge category, not MR-GO.  Doing so only further complicates what is already a very complex set of motions before this Court.

In this regard, this is the second motion to quash filed in this Court by the MR-GO Plaintiffs (and/or their counsel).  The first was filed seeking to quash WGII's November 19, 2007 subpoena to ILIT ("ILIT Subpoena").  The second, to which WGII responds herein, was filed to quash the Bea Subpoena.  As it is doing here, WGII has also filed a cross-motion to compel UC-Berkeley to comply with the ILIT Subpoena.

Just today, the Eastern District of Louisiana ruled that the MR-GO and Barge cases, which had been on separate scheduling tracks, should be placed on the same schedule.  *See In re Katrina*, Docket Record No. 11449.  The Court also severed certain claims in the Barge case captioned *Parfait Family, et al. v. United States, et al.*, Civil Action No. 07-3500, including those against WGII.  *Id.*  Finally, the Court ordered a March 7, 2008 Status Conference to discuss with the parties the implementation of its Order.  Until the full effect of this Order is realized, WGII has filed this Cross-Motion to protect its rights with respect to the Bea Subpoena.

[2] The MR-GO PSLC's arguments to the contrary (*see, e.g.,* PSLC Mot. at p. 2) (arguing that the WGII MR-GO subpoena served on ILIT "seek[s] the production of the same documents currently sought" by the WGII BARGE subpoena to Prof. Bea), the November 19, 2007 ILIT Subpoena in the MR-GO category of cases is not the same as the Bea Subpoena at issue now.  *Compare* Kasley Dec., Ex. A (Bea Subpoena in Barge) with Ex. B (ILIT Subpoena in MR-GO).

SFI-579208v1

- 2 -

WASHINGTON GROUP'S MEMORANDUM IN OPPOSITION TO MOTION AND CROSS-MOTION

respect to Robert Bea, made expressly clear that the subpoena directed to him was not served in connection with or seeking documents concerning his role as an expert retained by any party to the litigation. *See* Kasley Dec., Ex. A at pp. 2, 6. The dispute with respect to the ILIT Subpoena is currently the subject of a cross-motion by WGII to compel UC-Berkeley to comply with the November 19, 2007 subpoena to ILIT, which WGII has noticed for hearing on March 12, 2008.[3]

On February 12, 2008, and again on February 19, 2008, WGII received objections from UC-Berkeley counsel to the subpoenas served on Professors Seed, Bray, Reimer, and Pestana only to the extent the subpoenas sought "documents relating to personal transactions and travel." *See* Kasley Decl., Exs. C (2/12/08 C. Patti Ltr.) and D (2/19/08 C. Patti Ltr.).[4] Significantly, no similar, or any other objection for that matter, was made on behalf of Prof. Bea. Thus, now that the fourteen (14) day period mandated by Federal Rule of Civil Procedure 45 for written objections to the Bea Subpoena has passed, Prof. Bea has waived any such objections. Two days later, after the February 13, 2008 deadline for objecting to the Bea Subpoena had passed, the MR-GO PSLC filed the instant motion to quash and contemporaneous motion to stay production.

WGII now opposes the PSLC Motion and cross-moves to compel Prof. Bea to comply with the Subpoena.

**ARGUMENT**

As to the PSLC Quash Motion, WGII respectfully submits that the Court should deny the motion because the MR-GO PSLC's arguments do not demonstrate that it has standing to bring

---

[3] WGII's reply memorandum in further support of its cross-motion to compel UC-Berkeley to comply with the ILIT Subpoena was filed yesterday, February 27, 2008. It appears that the Court has changed the return date of the motions filed in connection with the discovery disputes between the parties concerning the subpoenas WGII served in the Northern District of California from March 12 to March 5, 2008. *See* 2/26/08 Clerk's Notice Scheduling Motions. WGII respectfully submits that in light of this Cross-Motion, the March 5 return date may need to be adjusted.

[4] This objection appears to address only Specification No. 15 in the subpoenas, which seeks: "documents reflecting the number of visits you made to New Orleans in connection with the ILIT Hurricane Katrina investigation, including, but not limited to, time sheets or similar documents you used to document the time you spent in New Orleans in connection with the ILIT Hurricane Katrina investigation." Kasley Decl., Ex. A. Counsel for UC-Berkeley has confirmed that, subject to this objection, Professors Seed, Bray, Reimer, and Pestana "intend to produce all responsive documents (other than those to which they have objected) on or before February 29, 2008." *See* Kasley Decl., Ex. E (C. Patti 2/15/08 E-mail).

SFI-579208v1

- 3 -

WASHINGTON GROUP'S MEMORANDUM IN OPPOSITION TO MOTION AND CROSS-MOTION

1  the quash motion and further, do not provide any legal basis to support the quash motion.

2  WGII also counter-moves to compel Prof. Bea to comply with the Subpoena for the
following reasons: i) Prof. Bea has waived any objections he might now attempt to assert to the
Subpoena; and ii) even if Prof. Bea had not waived an objection that the Subpoena seeks
irrelevant documents, such an objection is without merit because the documents sought by WGII
are highly relevant to both the MR-GO PSLC's claims and WGII's defenses thereto.

### I. The MR-GO PSLC Simply Does Not Have Standing to Move to Quash And As Such, The Motion Should Be Rejected

The MR-GO PSLC avers that it has standing to contest the Bea Subpoena because it "asserts a right of privilege with regard to the documents sought because the subpoena issued by WGII is simply a subversive attempt to obtain information developed by Plaintiffs [sic] expert Robert Bea outside the permissible scope of discovery." PSLC Mot. at p. 4.[5]  In fact, the MR-GO PSLC returns repeatedly to its "subversive attempt to obtain expert information" argument. *Id.* at pp. 1, 3. In particular, although conceding that Prof. Bea was not hired as an expert until March, 2007, the MR-GO PSLC now argues that Prof. Bea was "backgrounding the litigation" (whatever that means) beginning in March, 2006. *Id.* p. 5. The MR-GO PSLC has offered no factual support for this contention by way of sworn affidavit or otherwise, which is not surprising because it is flatly contradicted by Prof. Bea's sworn deposition testimony in November, 2007. Specifically, on November 19, 2007, in a deposition conducted by the United States, not WGII, Prof. Bea testified as follows:

> Q.   I would like to find out how you first became involved in this litigation.
>
> A.   It happened a year from -- Well, March, 19--Or, pardon me. March, 2006.  I was contacted by Mr. Danny Becnel and subsequently by Joseph Bruno.

---

[5] This asserted basis for standing is identical to the basis for standing claimed by the MR-GO Plaintiffs in support of their motion to quash the ILIT Subpoena served by WGII in the MR-GO category of cases in November, 2007.

| | | |
|---|---|---|
| 1 | Q. | And what did they tell you at that time? |
| 2 | A. | Well, they were actually asking *would I serve as an expert* |
| 3 | | concerned with the consolidated Katrina litigation Federal |
| 4 | | District Court, New Orleans. |
| 5 | Q. | *And did you agree at that time ?* |
| 6 | A. | *No, I did not.* |
| 7 | Q. | Okay. *Did you subsequently agree?* |
| 8 | A. | Yes. *March, 2007.* |
| 9 | Q. | I understand from your previous answer that you were first |
| 10 | | contacted concerning this litigation in March of 2006. |
| 11 | A. | Correct. |
| 12 | Q. | *At that time you did not agree to serve as an expert.* |
| 13 | A. | *Correct.* |
| 14 | Q. | Did you have continuing conversations with either Mr. |
| 15 | | Becnel or Mr. Bruno after that initial discussion? |
| 16 | A. | Certainly. |
| 17 | Q. | And can you tell me a little bit about those conversations? |
| 18 | A. | Really dealing with *understanding details of the studies* |
| 19 | | *that we had performed here* since September 30th, 2005. |
| 20 | Q. | And when you say "we had performed here", what studies |
| 21 | | are you referring to that you had performed beginning in |
| 22 | | September of 2005? |
| 23 | A. | *Those were the studies that are documented in the* |
| 24 | | *Independent Levee Investigation Team report.* |

Kasley Dec., Ex. F (excerpts of 11/19/07 Bea Tr. at 10:21-12:15) (emphasis added).[6] Prof. Bea

---

[6] The November 19, 2007 deposition of Prof. Bea was conducted by the United States on behalf of the Army Corps of Engineers. Thus, WGII does not understand the MR-GO PSLC argument that "WGII chose to depose Professor Bea without doing any background investigation." PSLC Mot. at p. 4. Moreover, this argument adds nothing to the analysis.

SFI-579208v1                                    - 5 -                WASHINGTON GROUP'S MEMORANDUM IN
                                                                      OPPOSITION TO MOTION AND CROSS-MOTION

1  never stated during this testimony, relied upon by the MR-GO PSLC now for the contention that
2  Prof. Bea "undert[ook] litigation related work between March 2006 and March 2007" (PSLC Mot.
3  at 5), that he was "backgrounding the litigation" instituted by the MR-GO PSLC, or that he was
4  doing *any* "litigation related work." Instead, Prof. Bea very clearly and plainly testified ***under***
5  ***oath*** that the conversations he had with Danny Becnel and/or Joseph Bruno "[r]eally deal[t] with
6  understanding *details of the studies*" performed by ILIT, not "backgrounding the litigation" or
7  "litigation related work." *See* Kasley Decl., Ex. F at 12:6-8 (emphasis added). Importantly, when
8  counsel for the United States asked Prof. Bea to testify about these conversations between March,
9  2006 and March, 2007, no one on behalf of the MR-GO PSLC (including Messrs. Becnel or
10  Bruno), or any one else for that matter, objected to the question on the grounds that it sought
11  work product or that the question improperly accelerated the deadline for expert discovery, as
12  now argued by the MR-GO PSLC. *See* PSLC Mot. at p. 6.

13  Further, although the MR-GO PSLC could have provided in the Declaration of Lewis
14  Scott Joanen submitted in support of the Quash Motion, or any other affidavit or certification for
15  that matter, the necessary facts to support its contentions that Prof. Bea was conducting "litigation
16  related work," no such support has been provided. This is so because Prof. Bea continued to
17  testify at his November 19, 2007 deposition that he did not begin to provide any services to the
18  MR-GO PSLC until March, 2007. *See* Kasley Dec., Ex. F (excerpts of 11/19/07 Bea Tr. at
19  125:22-126:8 (testifying that he had billed "[a]pproximately 400 hours to the MRGO group"
20  since March, 2007). This testimony flatly contradicts the MR-GO PSLC's contention now that
21  Prof. Bea was providing "litigation related work" beginning in March, 2006. Moreover, Prof.
22  Bea also testified ***under oath*** at his deposition, contrary to the MR-GO PSLC's unsupported
23  contention now, that as of November, 2007, he continued his ILIT work. *Cf.* PSLC Mot. at 5
24  (arguing, without any support, that "Professor Bea's ILIT work terminated on May 23, 2006").
25  Specifically, Prof. Bea testified that as of his November 19, 2007 deposition, he had spent
26  "[a]proximately 5,530" hours "extending and elaborating *on the ILIT report*" (*see* Kasley Dec.,
27  Ex. F (excerpts of 11/19/07 Bea Tr. at 126:23-127:15) (emphasis added)) and that he had
28  "actually been spending much more pro bono hours *since this report* [the July 31, 2006 Final

SFI-579208v1 — - 6 - — WASHINGTON GROUP'S MEMORANDUM IN OPPOSITION TO MOTION AND CROSS-MOTION

1  ILIT Report] was written." *Id.* at 127:20-128:6-13 (testifying "since that time [when the July 31,

2  2006 Final ILIT Report was released] I have **continued** the pro bono work here . . . the ILIT

3  studies") (emphasis added)).[7]

4  Even if the MR-GO PSLC's "subversive attempt to obtain expert information" arguments

5  were true (which clearly, they are not), the MR-GO PSLC's claim is simply not a "privilege"

6  necessary to support standing for a motion to quash. *See, e.g., Estate of Ungar v. Palestinian

7  Auth.*, 400 F. Supp. 2d 541, 554 (S.D.N.Y. 2005) (denying motion to quash for lack of standing

8  where "[i]n the absence of a claim of privilege, a party usually does not have standing to object to

9  a subpoena directed to a non-party witness" and moving party "has not raised any such claims of

10 ***evidentiary privilege***") (emphasis added); *Nova Prod., Inc. v. Kisma Video, Inc.*, 220 F.R.D. 238,

11 241 (S.D.N.Y. 2004) (denying motion by individual defendants to quash nonparty subpoena

12 where the defendants "claim that the information at issue [sought by the nonparty subpoena] is

13 'proprietary and confidential,' [but] they do not assert any privilege" with respect to the

14 information); *E.E.O.C. v. Danka Indus., Inc.*, 990 F. Supp. 1138, 1141 (E.D. Mo. 1997) (denying

15 plaintiffs' motions to quash and for a protective order in connection with third-party subpoenas

16 seeking plaintiffs' employment and educational records because "plaintiffs do not assert any

17 claim of privilege with respect to the subpoenaed documents and, as such, they have no standing

18 to request that the subpoenas be quashed") (citations omitted); *Diamond State Ins. Co. v. Rebel

19 Oil Co.*, 157 F.R.D. 691, 698-99 (D. Nev. 1994) (denying motions to quash because "general

20 conclusory allegations" are insufficient to support privilege claims). As such, the MR-GO

21 PSLC's desperate attempt to support standing to challenge the Bea Subpoena, which, as

22 recognized by the MR-GO PSLC normally does not extend to parties (PSLC Mot. at p. 3), should

---

[7] Raymond Seed, Prof. Seed's colleague and the co-author of the ILIT reports with Prof. Bea, has confirmed that, to this day apparently, in addition to Prof. Bea, "some members of the team [ILIT] *continue* to perform [ILIT] related work" and that "follow-on work [is being] performed by some of the original team members" of ILIT. *See* 2/18/08 Declaration of Raymond B. Seed at ¶ 2 (submitted by UC-Berkeley in opposition to WGII's cross-motion to compel UC-Berkeley to comply with the ILIT Subpoena) (emphasis added) (Kasley Dec., Ex. L). WGII submits that the ***sworn testimony*** of Professors Bea and Seed far outweighs the MR-GO PSLC's unsupported and self-serving argument that "Professor Bea's ILIT work terminated on May 23, 2006." PSLC Mot. at p. 5.

be flatly rejected.[8]

## II. The MR-GO PSLC's Undue Burden and Relevance Arguments Are Meritless Because the MR-GO PSLC Does Not Have Standing to Raise Those Arguments, and In Any Event, There is No Undue Burden, and the Documents Sought Are Highly Relevant.

In support of the merits of its Quash Motion, the MR-GO PSLC alludes to perceived burdens associated with the Bea Subpoena. *See, e.g.,* PSLC Mot. at p. 6 (offering that the Subpoena "saddles Professor Bea with an unreasonably burdensome task to produce information subject of [sic] the subpoena because it improperly accelerates the deadlines already in place").[9] The MR-GO PSLC does not argue, however, that the burden is on it. In fact, the MR-GO PSLC makes clear that the burden its offers is apparently on Prof. Bea, who incidentally, has never objected to the Subpoena because of undue burden. The MR-GO PSLC, however, simply does not have standing to offer undue burden on Prof. Bea as the reason to quash the Bea Subpoena. 9 James Wm. Moore et al., *Moore's Federal Practice* § 45.50[3], at 45-79 (3d ed. 2007) Moore et al., *supra*, § 45.50[3], at 45-79 (noting that "a party to the action does not have standing to assert any rights of the nonparty as a basis for a motion to quash or modify a subpoena") (citations omitted). As such, it cannot offer any perceived undue burden on Prof. Bea in support of the merits of their quash motion.[10]

---

[8] Even if the MR-GO PSLC has standing to object to Prof. Bea's production of documents dated between March, 2006 and March, 2007, it has no objection as to documents dated between August 29, 2005 (the date of Hurricane Katrina) and February, 2006, and as such, Prof. Bea should be required to produce at least those documents.

[9] Even if the MR-GO PSLC had the standing required to raise undue burden on Prof. Bea, which it does not, as discussed above, that argument has been waived.

[10] In any event, the MR-GO PSLC's "undue burden on Prof. Bea argument" is completely undermined by the fact that UC-Berkeley has already informed WGII that Professors Seed, Bray, Reimer, and Pestana are collecting the very documents sought by WGII from Prof. Bea (except a small portion of "documents relating to personal transactions and travel") for production on February 29, 2008. *See, e.g.,* Kasley Dec., Ex. C (2/12/08 Ltr.). Clearly, Professors Seed, Bray, Reimer, and Pestana do not believe that the identical subpoenas they received place any "undue burden" on them. For this reason, the Court should flatly reject the MR-GO PSLC's argument that "[s]urely, this Court will agree that the interests of each of those 'other members of ILIT' are entitled to consideration by the Court before a blanket order of production is entered." PSLC Mot. at p. 6.

Moreover, while the MR-GO PSLC makes absolutely no effort to explain its position or even identify which of "the 'specifications of documents to be produced'" suffer from the alleged flaw that "WGII has given little consideration to the relevance of its requests" and that "much of the information sought by WGII is . . . irrelevant to the litigation at hand" (PSLC Mot. at pp. 7, 8), it does not matter because a party simply may not move under Rule 45 to quash a subpoena directed to a third party on the ground that the material sought is irrelevant. *See Windsor v. Martindale*, 175 F.R.D. 665, 668 (D. Colo. 1997) (rejecting motion to quash where defendant objected on relevance grounds, "objections that can only be raised by [the recipients of the third-party subpoenas]"); *Smith v. Midland Brake, Inc.*, 162 F.R.D. 683, 685 (D. Kan. 1995) (noting, while denying defendant's motion to quash where defendant argued that the challenged subpoena sought irrelevant documents, that "Fed. R. Civ. P. 45(c)(3)(A) enumerates four circumstances under which the court may enter an order quashing or modifying a subpoena" and ruling that defendant "has failed to establish that any of the circumstances set forth in the Rule are applicable"). Thus, the MR-GO PSLC's undue burden and relevance arguments in support of its Quash Motion rings hollow, and as such, WGII respectfully requests that the Court deny the motion.

### III. WGII's Cross-Motion to Compel Compliance With the Subpoena Should Be Granted.

As an initial matter, Rule 45 is clear that in order to simply not produce documents in response to a subpoena (as Prof. Bea has apparently decided to proceed here), a third party must object in writing within fourteen (14) days of service of the subpoena. *See* Fed. R. Civ. P. 45(c)(2)(B). WGII served the Subpoena on Prof. Bea on January 30, 2008. *See* Kasley Dec., Ex. A. Thus, if Prof. Bea had objections to the Subpoena, he was required to provide them in writing no later than February 13, 2008—fourteen (14) days after January 30, 2008. Prof. Bea failed to do so. In fact, counsel for UC-Berkeley specifically excluded Prof. Bea from his February 12, 2008 and February 19, 2008 correspondence asserting limited objections to the subpoenas served on Professors Seed, Bray, Reimer, and Pestana. *See* Kasley Dec., Exs. C and D. As such, Prof. Bea has waived any objections he may now attempt to belatedly assert. *See, e.g. McCoy v.*

*Southwest Airlines Co.*, 211 F.R.D. 381, 385 (C.D. Cal. 2002) (holding that "[f]ailure to serve timely objections waives all grounds for objection, ***including privilege***") (emphasis added); Moore et al., *supra*, § 45.41[1][c], at 45-72 (noting that "[i]f no timely written objection is served, the person subject to the subpoena generally waives any objection to production or inspection as commanded by the subpoena") (citations omitted).  Therefore, because Prof. Bea has not timely objected to the Subpoena in writing as required, he should now be compelled to comply with the Subpoena.

Even if, for the sake of argument, Prof. Bea somehow did not waive his objections by failing to serve them in writing as required within fourteen (14) days of the Subpoena, any such objections would be without merit.  For example, should Prof. Bea belatedly argue in response to this cross-motion that the information sought by the Subpoena is somehow not relevant (as the MR-GO PSLC has attempted to argue), WGII offers the following overview of the clear relevance of the information sought from Prof. Bea:

With respect to WGII, the MR-GO PSLC has alleged that in an area along the Industrial Canal (also known as the Inner Harbor Navigation Canal or "IHNC") in New Orleans called the "East Bank Industrial Area," WGII, through environmental remediation work performed for the U.S. Army Corps of Engineers between 2001 and 2005, "undermined the integrity of the levee, and/or flood wall along the eastern shoreline of the IHNC/Industrial Canal, abutting the Lower Ninth Ward of Orleans Parish," and because of WGII's acts and/or omissions "underseepage-induced erosion and other damage to the levee and/or flood wall [resulted], ultimately causing and/or contributing to its catastrophic failure." *See* Kasley Dec., Ex. G (excerpts from MR-GO Master Consolidated Class Action Complaint ¶¶ 40-45).

WGII has been largely unable to test these allegations because in response to what the Eastern District has labeled "common liability" discovery, the MR-GO PSLC has referred WGII back to the ILIT Report in response to no fewer than 70 separate discovery requests, without once identifying where in the 1,300-page Report the MR-GO PSLC relies. *See, e.g.,* Kasley Dec., Ex. H (excerpts from MR-GO Plaintiffs' Response to MRGO Defendants' First Set of Joint Interrogatories, Requests for Production of Documents and Requests for Admissions to Plaintiffs

Regarding Common Liability Issues at Response to Interrogatory Nos. 9, 10, 11, 12, 13, 14, 15, 16, 17, 19, 20, 22, 23, 25, 26, 27, 28, 29, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, and 43; and Response to Document Request Nos. 1, 4, 7, 8, 9, 10, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 24, 26, 27, 28, 29, 31, 32, 33, 34, 35, 38, 47, 48, 49, 53, 54, 55, 56, 57, 58, 60, 61, and 62).  Thus, WGII does not know what in particular in the ILIT Report the MR-GO PSLC alleges supports its claims.

WGII does know that much attention has been paid to statements in the July 31, 2006 Final ILIT Report that "persistent reports of underseepage and ponding of waters along this IHNC frontage at the west edge of the Lower Ninth Ward, and contractor's significant problems with dewatering of excavations along this same frontage, all bespoke of high lateral permeability within these strata."  Kasley Dec., Ex. I (excerpts of ILIT Final Report at p. 6-12).  Importantly, the "IHNC frontage" identified in this ILIT Report passage refers to the southern of two levee / flood wall breaches (one referred to as the "North Breach" and the other the "South Breach") within the East Bank Industrial Area near where WGII performed its environmental remediation work for the U.S. Army Corps of Engineers.  Even more importantly, the ILIT Report identifies a contractor named McElwee Brothers, Inc. as a source of the aforementioned reports of "significant problems dewatering excavations" along the "same frontage" where the South Breach occurred:

> Demonstration that underseepage occurred at this site [the site of the South Breach in the Industrial Canal] . . . can also be based on the observed difficulties encountered by McElwee Construction [sic] in dewatering an excavation near the breach site immediately to the north (due to massive underseepage flow through the marsh depositions that were not adequately cut off at that site either).

*Id*. at p. 6-15. With respect to the North Breach, the ILIT Report again cites to McElwee Brothers, Inc.'s experiences in that area:  "This site [of the North Breach] has a well-documented history of underseepage problems; McElwee Construction [sic] had great difficulty dewatering an excavation *at this site* during earlier construction, and residents of the neighborhood had also

SFI-579208v1

- 11 -

WASHINGTON GROUP'S MEMORANDUM IN OPPOSITION TO MOTION AND CROSS-MOTION

previously reported problems with seepage at the inboard toe." *Id*. at p. 6-18 (emphasis added). There is no dispute that the ILIT Report relied upon information provided by McElwee Brothers, Inc. in reaching its conclusions as to the cause, timing, and mode of failures of the levee and/or floodwalls adjacent to the East Bank Industrial Area (the North and South Breaches). Further, the MR-GO PSLC has clearly relied on the ILIT Report's conclusions in support of the allegations against WGII. As such, the information sought by WGII is clearly relevant and therefore discoverable from Prof. Bea.[11]

Moreover, the information sought is further relevant and critical to WGII's defense of the MR-GO PSLC's allegations because WGII has learned through third-party discovery from McElwee Brothers, Inc. that, contrary to the ILIT Report's conclusions, "McElwee Bros. ***has not conducted or attempted to conduct dewatering procedures along the Industrial Canal's east bank between Florida and Claiborne avenues***," the northern and southern boundaries, respectively, of the East Bank Industrial Area. *See* Kasley Dec., Ex. J (11/19/07 Responses to Subpoena Requiring the Production of Documents at p. 3) (emphasis added). Further, WGII has learned that along with dewatering procedures, "McElwee Bros. has ***not*** conducted or attempted to conduct excavations along the Industrial Canal's east bank between Florida and Claiborne avenues"—again, in apparent contradiction of the conclusions contained in the ILIT Report. *Id.* (emphasis added). Obviously, these revelations are critical to WGII and are clearly relevant to the MR-GO PSLC's allegations concerning WGII and as such, the discovery sought from Prof. Bea is proper.[12] Indeed, in response to the third party discovery WGII propounded on McElwee

---

[11] In particular, Specification Nos. 1 (eyewitnesses or other interviews concerning difficulty dewatering excavations), 2 (reports of underseepage), 3 (complaints of underseepage), 4 (as well as 11, 12, 13, 14, and 19) (what theories of failure were examined), 5 (whether WGII was made aware of underseepage), 6 (whether anyone else was made aware of underseepage), 7 (ILIT requests for information from McElwee), and 8 (as well as 9) (information provided by McElwee to ILIT) of the Bea Subpoena all seek information concerning underseepage, communications with McElwee or others about underseepage, and whether ILIT investigated theories other than underseepage—topics clearly relevant to the MR-GO PSLC's claims against WGII and the MR-GO PSLC's demonstrated reliance on the ILIT Report.

[12] The MR-GO PSLC's argument in support of its Quash Motion that discovery sought from Prof. Bea somehow violates McElwee Brothers, Inc.'s "privacy interests" is specious in light of the fact that McElwee has responded to WGII's discovery concerning its communications with the ILIT team, and Prof. Robert Bea in particular, including the production of e-mails between McElwee and Prof. Bea. Further, it is also specious for the MR-GO PSLC to argue that

Brothers, Inc., in addition to producing some information, Melvin M.L. McElwee, Sr. instructed WGII that **"Dr. Bea is the best source for this information."** Kasley Dec., Ex. J (at p. 2) (emphasis added).[13] Given that the MR-GO PSLC has clearly and extensively relied on the ILIT Report in support of allegations against WGII, **and** as noted above, some of those very conclusions have been cast into serious doubt by other the responses of other third parties, **and** those very same third parties have told WGII that Prof. Robert Bea is "the **best** source for this information," the discovery sought by WGII from Prof. Bea is clearly relevant. As such, Prof. Bea should be compelled to comply with the Subpoena.[14]

## CONCLUSION

This is now the second time that WGII has had to respond to completely meritless arguments in this Court offered by a party (or its counsel) with no standing to challenge a third-party subpoena that clearly seeks relevant, discoverable material. Yet, the MR-GO PSLC has accomplished what it had hoped for: further delay of WGII's discovery of relevant, critical information. This continued gamesmanship hinders WGII's good faith efforts to comply with the Eastern District of Louisiana's Case Management Order deadlines. For these reasons, and for the reasons set forth above, the MR-GO PSLC's motion to quash and for a contemporaneous stay should be denied.

---

(continued…)

"WGII has given no consideration to the privacy concerns of citizens of the Lower Ninth Ward (as set forth in specification numbers 1 and 3)" when these statements are the subject of and/or contained in ILIT reports that are widely available on the Internet and nothing has been provided by the MR-GO PSLC demonstrating that any such "citizens of the Lower Ninth Ward" believed that their statements to Prof. Bea or any one else for that matter would be confidential.

[13] Notably, it appears from documents produced by McElwee Brothers, Inc. that Prof. Bea had extensive contact with Melvin M.L. McElwee, Sr. in May, 2006 and again in June, 2006 concerning the release of the Final ILIT Report—evidence clearly contradicting the MR-GO PSLC's claim that "Professor Bea's ILIT work terminated on May 23, 2006." *See, e.g.,* Kasley Dec., Ex. K (6/22/06 E-mail).

[14] In particular, Specification Nos. 4 (and 11, 12, 13, 14, and 19) (what theories of failure were examined), as well as 10 (instances of disagreement among the ILIT members) of the Subpoena seek information concerning whether ILIT investigated theories other than underseepage and whether any ILIT member questioned what ILIT was being told by sources like McElwee—topics clearly relevant to the MRGO-PSLC's claims against WGII and the MR-GO PSLC's reliance on the ILIT Report.

Further, for the reasons set forth above, Prof. Bob Bea should be ordered to comply with the Bea Subpoena and to produce all responsive documents to WGII in an expeditious fashion.

Dated:  February 28, 2008

Respectfully submitted,

   /S/  Aaron L. Agenbroad
Aaron L. Agenbroad (State Bar No. 242613)
alagenbroad@jonesday.com
Jones Day
555 California Street
26th Floor
San Francisco, CA  94104-1500
Telephone:  (415) 626-3939
Facsimile:  (415) 875-5700

Of Counsel

Adrian Wager-Zito
Shannon M. Kasley
Jones Day
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Telephone:  (202) 879-3939
Facsimile:  (202) 626-1700

William D. Treeby, 12901
Carmelite M. Bertaut, 3054
Heather S. Lonian, 29956
        Of
Stone Pigman Walther Wittmann L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Telephone:  (504) 581-3200
Facsimile:   (504) 581-3361

Attorneys for Washington Group International, Inc., a division of URS Corporation

SFI-579208v1

- 14 -

WASHINGTON GROUP'S MEMORANDUM IN OPPOSITION TO MOTION AND CROSS-MOTION

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 28th of February, 2008, I caused to be served a true and correct copy of the foregoing Washington Group International, Inc.'s Memorandum in Opposition to the Motion to Quash and Contemporaneous Motion to Stay Production, and in Support of Cross-Motion to Compel Compliance With the Subpoena by e-mail in PDF format to:

| | |
|---|---|
| Christopher M. Patti (christopher.patti@ucop.edu)<br>University Counsel<br>1111 Franklin Street, 8th Floor<br>Oakland, California  94607-5200<br>(510) 987-9739 (telephone)<br>(510) 987-5757 (facsimile) | Joseph M. Bruno (jbruno@jbrunolaw.com)<br>Scott Joanen (scott@jbrunolaw.com)<br>The Law Offices of Joseph M. Bruno<br>855 Baronne Street<br>New Orleans, Louisiana  70113<br>(504) 525-1335 (telephone)<br>(504) 561-6775 (facsimile) |